AUSTIN, Banking Commissioner, v. TEXAS STATE BANK et al.  (No. 11570.)*

(Court of Civil Appeals of Texas. Fort Worth. May 8, 1926. Rehearing Denied June 5, 1926.)

Banks and banking ⟐⟐179.

Customers' notes, deposited by bank with another as collateral for loans, *held* subject to be applied by creditor bank to payment of notes given in lieu of debtor bank's obligations, in view of agreement that collateral was given to secure "any other liability," regardless of whether notes were specifically deposited to secure such note, and notwithstanding Vernon's Sayles' Ann. Civ. St. 1914, art. 530, now Rev. St. 1925, art. 499.

Appeal from District Court, Tarrant County; H. S. Lattimore, Judge.

Suit by J. L. Chapman, as Commissioner of Insurance and Banking, against the Texas State Bank of Fort Worth and another, in which C. O. Austin, as Banking Commissioner, was substituted as plaintiff. Judgment for defendants, and plaintiff appeals. Affirmed.

Goree, Odell & Allen, of Fort Worth, and Ernest May, of Austin, for appellant.

Samuels & Brown, of Fort Worth, for appellees.

CONNER, C. J. This suit was instituted in the district court of Tarrant county on February 21, 1923, by J. L. Chapman, as commissioner of insurance and banking for the state of Texas, against the Farmers' & Merchants' Bank of Ranger, Tex., and the Texas State Bank of Fort Worth, Tex. The banking commissioner is prosecuting the suit in his capacity as statutory receiver for the Farmers' & Merchants' Bank of Ranger, a banking corporation in process of liquidation under the state laws.

The case was tried upon an agreed statement of facts as authorized by article 2177, Rev. Statutes 1925. The statement is somewhat complicated and not easily condensed or summarized, and perhaps the case would be more accurately disposed of by setting out the full statement and following it, as did the trial court with the simple conclusion reached. We will, however, attempt to express in a very brief way the view imposed upon us by a consideration of the record.

The statement of the facts develops a series of transactions consisting of various loans of money and extended credits on the part of the Texas State Bank of Fort Worth to the Farmers' & Merchants' State Bank of Ranger, extending from February 16, 1921, to September, 1921. The initial loan was in the sum of $100,000, on February 16, 1921, to secure which the Farmers' & Merchants' State Bank pledged its customers' notes in a

sum not disclosed in the statement of facts. Thereafter on April 20, 1921, to subserve the purposes of the Farmers' & Merchants' State Bank of Ranger, the $100,000 obligation, which in the meantime had matured, was substituted by the following four notes:

"Ranger Water Works Company, $25,000; M. H. Hagaman, $25,000; Leslie H. Hagaman, $20,000; Jno. M. Gholson, $30,000."

The delivery of these notes to the Fort Worth State Bank was accompanied by the Ranger Bank's express written guaranty for payment. The four notes above mentioned not having been paid upon the dates of their maturity, the Farmers' & Merchants' State Bank of Ranger secured an extension of the same upon its second guaranty for their payment, reciting that it was given "in order to induce said bank (the Texas State Bank of Fort Worth) to give such credit." On July 21, 1921, Mr. Sturgis, as active vice president of the Ranger Bank, transmitted to the Texas State Bank of Fort Worth its customers' notes and bills receivable, aggregating $49,875, to be used by the Fort Worth Bank "as a margin of collateral to notes which you (the Fort Worth Bank) hold our security guarantee." Prior to this date, however, on June 25, 1921, the Texas Bank & Trust Company of Ranger, Tex., consolidated with the Farmers' & Merchants' State Bank of the same place by joint action of the directors of the two corporations, by virtue of which the Farmers' & Merchants' State Bank took over the title and possession of all the property of the Texas Bank & Trust Company and assumed all of its liabilities. Prior to this consolidation, to wit, June 8, 1921, the Texas Bank & Trust Company had executed to the Texas State Bank of Fort Worth its promissory note for $57,400 for money actually advanced, payable 30 days after date. The Texas Bank & Trust Company was further indebted to the Texas State Bank at the time of the consolidation in an additional sum of $10,600. To secure the note for $57,400, the Texas Bank & Trust Company had pledged customers' notes owned by that bank in the sum of $79,800. This indebtedness of the Texas Bank & Trust Company was renewed on July 21, 1921, by the Farmers' & Merchants' State Bank, and this indebtedness was again renewed on October 4, 1921; it having been reduced to $49,300. On August 15, 1921, C. C. Chenoweth, as active vice president of the Merchants' & Farmers' State Bank, executed to the Texas State Bank a promissory note for $10,600, due October 8, 1921, which took the place of the same indebtedness of the Texas Bank & Trust Company above described, and to secure this note customers' notes of the Farmers' & Merchants' State Bank, aggregating $13,504.32, were hypothecated and deposited with the Texas State Bank.

In this condition of the indebtedness of the Farmers' & Merchants' Bank of Ranger, less perhaps some credits that we need not here notice, this bank, on November 4, 1921, was closed and officially taken over. by the commissioner of insurance and banking of the state of Texas, and has since been liquidated by him, and its assets are insufficient to pay its liabilities. The balance due on the notes for $57,400 and $10,600 above mentioned were paid on November 7, 1921, from moneys of the Farmers' & Merchants' State Bank on deposit with the Texas State Bank and in its possession. At this time the four customers' notes given on April 20, 1921, in lieu of the said $100,000 obligation, had all been paid and discharged, except the note of John M. Gholson for $30,000. The Texas State Bank retained the collateral notes which had been deposited with it as security and collected on the same to the extent of $38,138.84 and applied the proceeds, as we understand the statement of facts, to the amount due upon the said Gholson note, leaving an excess of its collections on collateral notes after payment of all obligations of the Farmers' & Merchants' State Bank of Ranger of $5,000 now on deposit with the Texas State Bank, and for which the court below rendered its judgment in favor of the commissioner.

There is no claim on the part of the Texas State Bank of Fort Worth that it is entitled to this $5,000; the contest is over the claim of the commissioner of insurance and banking that he is entitled to the sum of $31,883.-07, which was applied, as before indicated, in liquidation of the Gholson note. The crux of appellant's contention is that the customers' notes collected by the Texas State Bank and applied to the Gholson note were not originally and specifically deposited to secure that note, and that hence under article 530, Rev. Civ. Statutes 1914, article 499, Rev. Civ. Statutes 1925, the Texas State Bank was not authorized to apply the proceeds as stated in payment of the Gholson note. The statute referred to reads as follows:

"The directors of any banking corporation organized under this title may appoint and remove any officer or other employee at pleasure. No officer or employee shall have power to indorse, sell, pledge or hypothecate any note, bond or other obligation received by such corporation for money loaned, until such power and authority shall have been given such officer or employee by the board of directors in a regular meeting of the board, a written record of which proceeding shall have first been made upon the minutes of the corporation; and all such acts done by any officer or employee without such authority shall be null and void."

In determining the question so presented, we will further state that at the time the Farmers' & Merchants' State Bank of Ranger became insolvent and closed its doors, it was taken over by Hon. Ed Hall, then commissioner of insurance and banking of the state of Texas, the present commissioner having later succeeded to the office; that before and at the time the bank was taken over by Commissioner Hall he. knew of the deposits of the customers' notes and of the guaranties hereinbefore mentioned, and did not demand a return of such notes, but they were retained and collected by the Texas State Bank of Fort Worth, as we have stated. It should be further stated that the agreed statement of facts discloses the following instrument, to wit:

"Farmers' & Merchants' State Bank,
"Ranger, Tex., Feb. 11, 1921.

"Whereas, it is highly desirable that the officers of this bank should, from time to time, be able to borrow sums of money on its behalf now, therefore, resolved:

"(1) That the president, vice president, and cashier of this bank are, and each or either of them is hereby authorized to borrow, from time to time, on behalf of this bank, from the Irving National Bank, New York, Texas State Bank, Fort Worth, Tex., and any other of its correspondents, such sums of money, for such times and upon such terms as may to them or to either of them seem advisable, and to execute obligations in the name of the bank for the payment of any sums so borrowed.

"(2) That each or either of the said officers is hereby authorized to pledge any of the bonds, stocks, bills receivable or other securities or property of this bank for the purposes of securing any moneys so borrowed, upon such terms as may to the officer pledging the same seem advisable.

"(3) That each or either of the said officers is hereby authorized to rediscount with the banks, as stated above, any of the bills receivable now or hereafter held by this bank upon such terms and at such time or times as to him or them may seem advisable.

"(4) That the foregoing powers shall continue and remain in force until express notice of their revocation has been duly given to said banks.

"I, ——, do hereby certify that the foregoing is a true extract from the minutes of a meeting of the board of directors of the Farmers' & Merchants' State Bank, a quorum being present, held at Ranger, Tex., the 11th day of February, 1921.

"In witness whereof, I have hereunto set my hand and affixed the official seal of the said bank, this the 11th day of February, 1921. Farmers' & Merchants' State Bank, Ranger, Texas, by George F. Sturgis, Vice President. [Seal.]"

A certified copy of the foregoing resolution was forthwith furnished to the Texas State Bank of Fort Worth.

There is no contention, as we understand, that this resolution was not made at a regular meeting of the board of directors of the Farmers' & Merchants' State Bank and written record thereof made upon the minutes of the corporation, and it was after the receipt of a certified copy of this resolution by the Texas State Bank that it advanced the original sum of $100,000 heretofore mentioned. It should be further stated that all of the

notes that were executed by the Farmers' & Merchants' State Bank and the Texas Bank & Trust Company, payable to the Texas State Bank of Fort Worth for original obligations and renewals thereof in connection with the loans mentioned, were written on collateral form notes of the Texas State Bank, of which the following is a substantial copy:

"$......Due......Fort Worth, Texas,—— 192—.         after date, without grace for value received, I, we, or either of us, promise to pay to the order of —— at the office of Texas State Bank, in the city of Fort Worth, Tex., the sum of —— dollars for value received, negotiable and payable without defalcation or discount, with interest at the rate of ten per cent. per annum, from maturity until paid, and an additional amount of ten per cent. upon the principal and interest then due as attorney's fees, if sued upon or probated in any court or placed in the hands of an attorney for collection. —— have transferred and delivered to Texas State Bank of Fort Worth, as collateral security, for the payment of this and of any other liabilities of the undersigned to said bank, due or to become due or that may hereafter be contracted, the following property, value of which is —— dollars, viz.:

"And the undersigned hereby give the said payee and its assigns authority to sell said property, or any part thereof, or any substitute therefor, and all additions thereto, on the maturity of the above note, or at any time thereafter, or before, in the event of the said securities depreciating in value, at public or private sale, either with or without advertising same or demanding payment, or giving notice, with the right to said bank and its assigns themselves to be the purchasers. And after deducting all costs and expenses, including five per cent. for services for making sale, to apply the residue to the payment of any, or all liabilities as aforesaid, as said payee, or its president, cashier or assigns shall elect, returning the overplus to the undersigned; and in case the proceeds of the sale of the said property shall not cover the principal, interest and expense, the undersigned engages to pay the deficiency forthwith after such sale, with legal interest. "No ——      .              ——————."

The collateral notes that were hypothecated with the Texas State Bank of Fort Worth to secure the obligations herein mentioned were set out and described in the principal obligations.

It will be noted, from the terms of the form of the original obligations just quoted, that these original obligations of the Farm- ers' & Merchants' State Bank of Ranger, executed and delivered to the Texas State Bank of Fort Worth at the several times the Texas State Bank of Fort Worth made the several loans and extensions hereinbefore mentioned, expressly transferred the customers' notes or collateral security deposited with the Texas State Bank for said loans or extensions so deposited not only to secure the original obligation accompanying such collateral security, but also made the deposit as collateral security for "any other liability" of the Farmers' & Merchants' State Bank of Ranger to the Texas State Bank of Fort Worth. It should be further stated that at the time of the specific guaranties of April 20, 1921, and of June 30, 1921, executed by George S. Sturgis, active vice president of the Farmers' & Merchants' State Bank of Ranger, no resolution authorizing these guaranties was formally made and entered upon the bank's minutes, but they were discussed with the other active directors of his bank, and such other directors assented thereto.

It seems to us that the trial court and the officers of the Farmers' & Merchants' State Bank of Ranger and of the Texas State Bank of Fort Worth construed the terms of the resolution of the Farmers' & Merchants' State Bank of Ranger, dated February 11, 1921, hereinabove copied, as broad enough in its terms and effect to authorize George S. Sturgis, its vice president, or its president or cashier in securing loans and extensions to execute original obligations in the form and with the wording set forth in the copy hereinabove set out. If so, it would seem to follow that the Texas State Bank had the legal right to retain its excess collections, and to therewith discharge the Gholson note, whether or not the proceeds arose from customers' notes specifically deposited to secure the Gholson note or some other one of the obligations of the Farmers' & Merchants' State Bank of Ranger. The good faith of the officers of the banks named is not questioned, and we feel unwilling to say that the imputed construction above given of the proceedings by the officers of the banks mentioned is erroneous or results in any legal injury to the creditors of the Farmers' & Merchants' State Bank of Ranger now in charge of the appellant commissioner.

The judgment below will be accordingly affirmed.